1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3       Before The Honorable Kandis A. Westmore, Magistrate Judge

4

5    UNITED STATES OF AMERICA,        )
                                      )
6              Plaintiff,             )
                                      )
7    vs.                             )    No. 4:25-MJ-71375-MAG-1
                                      )
8    CHAM LI,                         )
                                      )
9              Defendant.            )
     _____)

10
                                     Oakland, California
11                                   Tuesday, November 25, 2025

12
       TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13           RECORDING 11:50 - 1:06 = 1 HOUR and 16 MINUTES

14   APPEARANCES:

15   For Plaintiff:

16                             United States Department of
                                  Justice
17                             United States Attorneys Office
                               450 Golden Gate Avenue
18                             11th Floor
                               San Francisco, California
                                  94102
19                        BY:  NOAH STERN, ESQ.

20   For Defendant:

21                             Federal Public Defender
                               1301 Clay Street
22                             Suite 1350N
                               Oakland, California 94612
23                        BY:  KAITLYN FRYZEK, ESQ.

     Transcribed by:           Echo Reporting, Inc.
24                             Contracted Court Reporter/
                               Transcriber
25                             echoreporting@yahoo.com

2

Tuesday, November 25, 2025                    11:50 a.m.

2                   P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4           THE CLERK:  Calling the Criminal Matter 25-71375-1

5   for U.S.A. versus Cham Li.

6       If I can have appearances, starting with counsel for

7   the government, please.

8           MR. STERN:  Good morning, your Honor.  Noah Stern

9   on behalf of the United States.

10          THE COURT:  Good morning -- or afternoon I should

11  -- or it's not afternoon yet.  Almost.  Okay.  Good morning.

12          MS. FRYZEK:  Good morning, your Honor.  Kaitlyn

13  Fryzek on behalf of Mr. Li.  He is present in custody.

14          THE COURT:  Okay.  Good morning.  And good

15  morning, Mr. Li.

16          OFFICER PORTILLO:  Good morning.  Jessica Portillo

17  with U.S. Pretrial Services.

18          THE INTERPRETER:  (Speaking Mandarin.)

19          THE COURT:  All right.  Good morning.

20      So, this matter is on for status regarding identify and

21  removal hearing.  And, of course, once we address that, he

22  would need to enter a plea as to the indictment and then

23  detention hearing.  And, so, my understanding is, Counsel,

24  you want to proceed with the detention hearing and then

25  address those other matters?

3

1           MS. FRYZEK:  We are happy to --

2           THE INTERPRETER:  Do I need to --

3           THE COURT:  Go ahead.

4           THE INTERPRETER:  (Interpreting for proposed

5  surety.)

6           MS. CUA (via Zoom, through interpreter):  I

7  understand.

8           MS. FRYZEK:  I have discussed with my client, and

9  we are prepared to waive identity.

10          THE COURT:  Okay.

11          THE INTERPRETER:  (Interpreting.)

12          THE COURT:  Okay.  Given his waiver of identity

13 and removal, let's have Mr. Li just state his full name into

14 the microphone for the record.

15          THE INTERPRETER:  (Interpreting.)

16          THE DEFENDANT:  My full name is Cham Li.

17          THE COURT:  Thank you.

18          THE INTERPRETER:  (Interpreting for proposed

19 surety.)

20          THE COURT:  All right.  And is he prepared to

21 enter his not guilty plea at this time?

22          MS. FRYZEK:  We can enter that plea.

23          THE COURT:  Okay.  And as to all counts?

24          MS. FRYZEK:  Yes.

25          THE COURT:  Okay.

4

1      THE INTERPRETER:  (Interpreting for proposed
2  surety.)

3      THE COURT:  Not guilty pleas have been entered.

4      THE INTERPRETER:  (Interpreting for proposed
5  surety.)

6      THE COURT:  And the Defendant has been arraigned.

7      THE INTERPRETER:  (Interpreting for proposed
8  surety.)

9      THE COURT:  Okay.  So, Pretrial Services prepared
10 a prebail report in this matter.

11     THE INTERPRETER:  (Interpreting for proposed
12 surety.)

13     THE COURT:  And based on all of the information in
14 that report, Pretrial Services recommends that the Defendant
15 be ordered released on a $75,000 bond --

16     THE INTERPRETER:  (Interpreting for proposed
17 surety.)

18     THE COURT:  -- secured by the equity in his
19 residence --

20     THE INTERPRETER:  (Interpreting for proposed
21 surety.)

22     THE COURT:  -- and cosigned by his fiancee --

23     THE INTERPRETER:  (Interpreting for proposed
24 surety.)

25     THE COURT:  -- Liserin Lau.

5

1          THE INTERPRETER:  (Interpreting for proposed
2 surety.)
3          THE COURT:  With six special conditions of
4 release.
5          THE INTERPRETER:  (Interpreting for proposed
6 surety.)
7          THE COURT:  The Government filed a memorandum in
8 support of the United States motion for detention.
9          THE INTERPRETER:  (Interpreting for proposed
10 surety.)
11         THE COURT:  And I have reviewed that memorandum.
12         THE INTERPRETER:  (Interpreting for proposed
13 surety.)
14         THE COURT:  Ms. Fryzek, have you had a chance to
15 review the Government's arguments and the memorandum?
16         MS. FRYZEK:  Yes, your Honor.
17         THE INTERPRETER:  (Interpreting for proposed
18 surety.)
19         THE COURT:  All right.  And, so, I would like to
20 hear from you regarding the Defendant's response to the
21 arguments made in the Government's motion, specifically,
22 arguing that all of the Section 3142(g) factors weigh in
23 favor of detention.
24         THE INTERPRETER:  (Interpreting for proposed
25 surety.)

6

1          MS. FRYZEK:  Most of the Government's arguments

2     center on the issue of flight, and Mr. Li has very strong

3     ties to this community.  He is not like a lot of other

4     Defendants who have no status here.  He has a Green Card,

5     and he has been here since -- in this country since 2007.

6     He has lived in California since 2013.

7          During his time here -- okay.

8          THE INTERPRETER:  (Interpreting for proposed

9     surety.)

10         Did you say 2017 he started living in this country?

11         MS. FRYZEK:  2007.

12         THE INTERPRETER:  2007.  (Interpreting for

13    proposed surety.)

14         THE COURT:  And then the year he started living in

15    California was 2013?

16         MS. FRYZEK:  Correct.

17         THE COURT:  Okay.

18         THE INTERPRETER:  (Interpreting for proposed

19    surety.)

20         THE COURT:  Okay.

21         MS. FRYZEK:  From -- while he was here, he got a

22    college degree.

23         THE INTERPRETER:  (Interpreting for proposed

24    surety.)

25         MS. FRYZEK:  He has -- he owns a home here in San

7

1 Leandro, California.

2        THE INTERPRETER:  (Interpreting for proposed
3 surety.)

4        MS. FRYZEK:  He works a full-time job.

5        THE INTERPRETER:  (Interpreting for proposed
6 surety.)

7        MS. FRYZEK:  He does travel to see family.  That's
8 not uncommon for someone who has parents who live overseas.

9        THE INTERPRETER:  (Interpreting for proposed
10 surety.)

11        MS. FRYZEK:  The family that he does have in the
12 United States are the maternal side of his family.  One of
13 the -- the potential custodian or surety, who is on Zoom, is
14 a maternal aunt who lives in the Tampa area and has offered
15 her home as a place where he can reside if needed or while
16 he is in court, going to court.

17        THE INTERPRETER:  (Interpreting for proposed
18 surety.)

19        THE COURT:  Okay.

20        MS. FRYZEK:  To briefly address some of the
21 circumstances of the offense that are described --

22        THE INTERPRETER:  (Interpreting for proposed
23 surety.)

24        MS. FRYZEK:  -- the Government had previously
25 described to this Court that the -- that Mr. Li's father had

8

1  connections in China --

2          THE COURT:  Right.

3          MS. FRYZEK:  -- through which some of the scheme

4  was allegedly effectuated.

5          THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7          MS. FRYZEK:  What, from my understanding, without

8  the benefit of full discovery is that none of those

9  connections ultimately resulted in the sales.

10          THE COURT:  None of the connection -- oh.  Go

11  ahead.

12          THE INTERPRETER:  (Interpreting for proposed

13  surety.)

14          THE COURT:  So, you're saying none of the

15  connections his father has to I think it was the Communist

16  -- the Chinese Communist Party, resulted in the sales?

17          MS. FRYZEK:  That are described by the Government

18  that took place.  That is my understanding at this point,

19  that Mr. Li -- the allegation is not that, although there

20  were those connections, that they resulted in actual sales

21  to Government officials.

22          THE INTERPRETER:  (Interpreting for proposed

23  surety.)

24          MS. FRYZEK:  I don't believe there's allegations

25  that Mr. Li talked to anyone directly in the Chinese

9

1  Communist Party.

2       THE INTERPRETER:  (Interpreting for proposed

3  surety.)

4       MS. FRYZEK:  The LLC that is described was one

5  where the coconspirator and the mastermind so to speak

6  handled the finances.

7       THE COURT:  And that would be Mr. Ho?

8       MS. FRYZEK:  Correct.  Mr. Li did not have access

9  to that bank account.

10      THE INTERPRETER:  (Interpreting for proposed

11  surety.)

12      MS. FRYZEK:  It's my understanding that Mr. Ho was

13  the one who actually got connections to -- I'm sorry -- got

14  connections for the sales and that Mr. Li ultimately, it is

15  alleged, got a very small amount of money from this

16  situation, around $3,000.  That's my information right now.

17      THE INTERPRETER:  (Interpreting for proposed

18  surety.)

19      MS. FRYZEK:  I will finally say that I understand

20  that Mr. Li did speak during an interview that was mentioned

21  by the Government at the last hearing.

22      THE COURT:  Um-hmm.

23      MS. FRYZEK:  And I think that demonstrates that he

24  is not somebody who is running from his problems.

25      THE INTERPRETER:  (Interpreting for proposed

10

1  surety.)

2          MS. FRYZEK:  So, the Defense request is broad

3  depending on what conditions the Court finds compelling and

4  reasonable to impose here, but there are conditions that I

5  believe can assure the Court that Mr. Li is not a flight

6  risk.  There are many options I think the Court could choose

7  from.  The Pretrial Report did not mention the aunt signing,

8  but she is available to sign.  There are additional location

9  monitors that we could entertain, like a GPS monitor or even

10 home detention, with permission to leave, of course, to

11 attend court in Florida.

12         THE INTERPRETER:  (Interpreting for proposed

13 surety.)

14         MS. FRYZEK:  There are some logistical challenges

15 to Mr. Li posting a secured bond while he is in custody, but

16 he is willing to sign a secured bond, a bond secured by the

17 value of his home.  It's hard to do that while he is in

18 custody, but it is something that he is willing to do, and

19 if that is the direction the Court wants to go, we would ask

20 the Court to consider a brief period of home -- home

21 detention for him to accomplish the paperwork involved.

22         THE INTERPRETER:  (Interpreting for proposed

23 surety.)

24         THE COURT:  Okay.  Anything more?

25         MS. FRYZEK:  I think that is all for now.

*Echo Reporting, Inc.*

11

1          THE INTERPRETER:  (Interpreting for proposed

2 surety.)

3          THE COURT:  Is there a date already set in -- for

4 the other Co-Defendants in this case in the Middle District

5 of Florida?

6          MR. STERN:  Your Honor --

7          THE INTERPRETER:  (Interpreting for proposed

8 surety.)

9          MR. STERN:  Your Honor, both Mr. Li and Mr.

10 Raymond were scheduled for an arraignment before the

11 Magistrate Judge in Tampa on December 4th at 3 p.m.

12          THE INTERPRETER:  (Interpreting for proposed

13 surety.)

14          THE COURT:  Okay.  And then there are two other

15 Co-Defendants.

16          THE INTERPRETER:  (Interpreting for proposed

17 surety.)

18          THE COURT:  One that was detained and one that was

19 released?

20          THE INTERPRETER:  (Interpreting for proposed

21 surety.)

22          MR. STERN:  Mr. Raymond was the Defendant who was

23 released.  The other two Co-Defendants are Mr. Ho and I

24 believe Mr. Chan.  They were detained.  I do not know what

25 their next court date is.

12

1          THE COURT:  Oh, okay.

2          MR. STERN:  They are in Tampa.

3          THE COURT:  In Tampa?

4          THE INTERPRETER:  (Interpreting for proposed

5  surety.)

6          THE COURT:  Okay.  And Mr. Raymond and Mr. Li --

7  or did you say Mr. Li and someone else were going to appear

8  on the 4th?

9          MR. STERN:  It's Mr. Li and Mr. Raymond who is the

10 Defendant who was arrested I believe in Alabama.

11         THE INTERPRETER:  (Interpreting for proposed

12 surety.)

13         THE COURT:  Okay.  I will say that I don't see any

14 information about the fiancee in the Pretrial Services

15 Report, even though it recommends that she's the one that

16 should cosign the bond.

17         MS. FRYZEK:  Your Honor, if I may briefly?

18         THE INTERPRETER:  (Interpreting for proposed

19 surety.)

20         MS. FRYZEK:  If I may briefly, she had indicated

21 to counsel she does not wish to be a bail resource.

22         THE COURT:  Okay.

23         THE INTERPRETER:  (Interpreting for proposed

24 surety.)

25         THE COURT:  Okay.  So, are they still staying

13

1   together in that -- given that?

2          MS. FRYZEK:  I will not speak to that, your Honor.

3          THE INTERPRETER:  (Interpreting for proposed

4   surety.)

5          MS. FRYZEK:  She does live at the home, but it is

6   owned by Mr. Li solely.

7          THE COURT:  Oh.

8          MS. FRYZEK:  And my understanding is that there

9   was some media coverage and that that was something she did

10  not want to be involved in.

11         THE INTERPRETER:  (Interpreting for proposed

12  surety.)

13         THE COURT:  Okay.  And then as to the aunt who is

14  on Zoom right now, Ms. Helen -- I guess they call her Helen

15  Cua, is that how you pronounce it?

16         THE INTERPRETER:  (Interpreting for proposed

17  surety.)

18         MS. CUA:  Yes.

19         THE COURT:  Okay.  I don't know what resources or

20  what financial resources she has because it just says that

21  she's retired, you know, where she lives and that her income

22  is zero dollars annually.  So, I'm not sure how she's a

23  resource for bail.

24         THE INTERPRETER:  (Interpreting for proposed

25  surety.)

14

1           MS. CUA:  I own my house.

2           THE COURT:  And she doesn't receive any sort of

3 retirement income?

4           THE INTERPRETER:  (Interpreting for proposed

5 surety.)

6           MS. CUA:  I have not yet, but my husband receives

7 retirement funds.

8           THE COURT:  Does she know the value of her home?

9 Does she know the value?

10          THE INTERPRETER:  (Interpreting for proposed

11 surety.)

12          MS. CUA:  Seven hundred thousand.

13          THE COURT:  Okay.  And it says here that she's

14 willing to sign on an unsecured bond as well as be a third

15 party custodian for him if he needs to have a place to stay

16 I guess when he's in Florida, is that right?

17          THE INTERPRETER:  (Interpreting for proposed

18 surety.)

19          MS. CUA:  Yes.

20          THE COURT:  Okay.  And she is Mr. Li's mother's

21 sister?

22          THE INTERPRETER:  (Interpreting for proposed

23 surety.)

24          MS. CUA:  Younger sister, yes.

25          THE COURT:  Okay.  And does she believe that if

15

1  she signs on a bond for his release -- I think Pretrial --

2  well, Pretrial Services proposed a $75,000 bond secured by

3  his property.  Does -- does she think that if he signs a

4  bond like that and she signs as a cosigner, that will --

5  that should assure this Court that he is going to appear

6  when required?

7           THE INTERPRETER:  (Interpreting for proposed

8  surety.)

9           MS. CUA:  Yes.  For sure.

10           THE COURT:  Does she understand -- and I guess I

11  want to make sure she understands that if she does sign on a

12  bond for his release and he does -- and he fails to appear

13  in court in Florida as ordered, the Government could get a

14  judgment against her for the full amount of the $75,000

15  bond, and that would be collected by, you know, whatever

16  legal means are available for enforcing judgments like

17  potentially putting a lien on her home?

18           THE INTERPRETER:  (Interpreting for proposed

19  surety.)

20           MS. CUA:  Yes, I do.

21           THE COURT:  Okay.  I'll now hear from the

22  Government for any response to the arguments proffered by

23  the Defense and any response to information about potential

24  cosigners.

25           THE INTERPRETER:  (Interpreting for proposed

16

1  surety.)

2          MR. STERN:  Your Honor, the Government continues

3  to believe that Mr. Li should be detained as a risk of

4  flight.  The weight --

5          THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7          MR. STERN:  The weight of the evidence makes it

8  very likely that Mr. Li will face a very significant

9  punishment in this case, giving him a strong incentive to

10 flee.

11         THE INTERPRETER:  (Interpreting for proposed

12 surety.)

13         MR. STERN:  And Mr. Li's strong connections to

14 China, including the fact that all of his immediate family

15 is there gives him the means to flee.

16         THE INTERPRETER:  (Interpreting for proposed

17 surety.)

18         MR. STERN:  Ms. Fryzek argued that the fact that

19 Mr. Li spoke with agents means that he's not running from

20 his problems, but from that interview, it's quite clear that

21 Mr. Li did not understand the gravity of the charges against

22 him at that time.

23         THE COURT:  Okay.

24         THE INTERPRETER:  (Interpreting for proposed

25 surety.)

17

1        MR. STERN:  It's apparent to me from listening to

2  that interview that Mr. Li expected that what he was being

3  interviewed about was not going to cause a major disruption

4  to his life.  And, to the extent someone might face

5  significant consequences, it would likely be Mr. -- Mr. Ho.

6        THE INTERPRETER:  (Interpreting for proposed

7  surety.)

8        MR. STERN:  But what Mr. Li said during that

9  interview strengthened the weight of the evidence against

10  him and increased the likelihood of significant punishment.

11        THE INTERPRETER:  (Interpreting for proposed

12  surety.)

13        MR. STERN:  While Mr. Li did deny certain conduct,

14  he did admit to numerous facts that are likely to be very

15  significant against him in a trial in this matter.

16        THE INTERPRETER:  (Interpreting for proposed

17  surety.)

18        MR. STERN:  Mr. Li admitted to setting up the

19  company, Janford, with Mr. Ho, the company that was used in

20  this export conspiracy.

21        THE INTERPRETER:  (Interpreting for proposed

22  surety.)

23        MR. STERN:  Mr. Li admitted the ultimate goal was

24  to get chips to China.

25        THE INTERPRETER:  (Interpreting for proposed

18

1  surety.)

2          MR. STERN:  Mr. Li knew significant information

3  about Janford's operations and discussed at length

4  conversations with Mr. Ho.

5          THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7          MR. STERN:  And while Mr. Li denied knowing the

8  results of certain transactions, he admitted being involved

9  in setting transactions up.

10          THE INTERPRETER:  (Interpreting for proposed

11  surety.)

12          MR. STERN:  He admitted being the person with

13  knowledge about the technology and the specifications for

14  the technology.

15          THE INTERPRETER:  (Interpreting for proposed

16  surety.)

17          MR. STERN:  He admitted that -- to knowing about

18  how China operates and how buyers might seek to get chips

19  into the country.

20          THE INTERPRETER:  (Interpreting for proposed

21  surety.)

22          MR. STERN:  Mr. Li admitted to speaking to

23  potential customers in China, and when Mr. Li was asked

24  whether any of the potential customers were the military, he

25  said that they didn't say that, but if they were, they

19

1  wouldn't have told him.

2        THE INTERPRETER:  (Interpreting for proposed

3  surety.)

4        MR. STERN:  Mr. Li also admitted to knowing what

5  countries certain shipments would flow through to get to

6  China, and he expressed disappointment that they were never

7  able to make what he considered to be a large deal.

8        THE INTERPRETER:  (Interpreting for proposed

9  surety.)

10        MR. STERN:  And the admissions isn this interview

11  underscores what's already clear from documentary evidence

12  such as text messages where -- in which it is clear that Mr.

13  Ho relied on Mr. Li for -- for knowledge about the

14  technology.

15        THE INTERPRETER:  (Interpreting for proposed

16  surety.)

17        MR. STERN:  It is apparent from those text

18  messages that Mr. Ho did not know a lot about the China

19  market and did not know about the specifics of the AI

20  industry and Nvidia chips and that Mr. Li was providing Mr.

21  Ho with this information.

22        THE INTERPRETER:  (Interpreting for proposed

23  surety.)

24        MR. STERN:  The text messages also make it clear

25  that Mr. Li knew that these chips were export controlled and

20

1   the reasons, some of the reasons for those export controls.

2           THE INTERPRETER:  (Interpreting for proposed

3   surety.)

4           MR. STERN:  In the text messages, he talked about

5   China wanting these chips because they were building a huge

6   AI industry there.

7           THE INTERPRETER:  (Interpreting for proposed

8   surety.)

9           MR. STERN:  And he also discussed a different

10  Nvidia chip that was not export controlled and talked about

11  how that was for Asia so that China could not out compete

12  us.

13          THE INTERPRETER:  (Interpreting for proposed

14  surety.)

15          MR. STERN:  I just want to note that I've produced

16  the text messages that I'm --

17          THE COURT:  Okay.

18          MR. STERN:  -- discussing to defense counsel, and

19  I've also produced the recording of the interview with Mr.

20  Li to defense counsel.

21          THE INTERPRETER:  (Interpreting for proposed

22  surety.)

23          MR. STERN:  Mr. Li was also included on emails and

24  other documents which made it clear that what Janford was

25  exporting to China were the prohibited chips, the A100 and

21

1  the H200 chips.

2          THE INTERPRETER:  (Interpreting for proposed

3  surety.)

4          MR. STERN:  Specifically, Mr. Li reviewed

5  contracts and purchase orders that specified that those

6  chips were at issue.

7          THE INTERPRETER:  (Interpreting for proposed

8  surety.)

9          MR. STERN:  With respect to Mr. Li's connections

10  to the United States, I first wanted to point out that

11  Defendant Ho is a United States citizen, and he is one of

12  the Defendants who was ordered detained in Tampa as a risk

13  of flight.

14          THE INTERPRETER:  (Interpreting for proposed

15  surety.)

16          THE COURT:  I'm not sure there's much I can do

17  with that information, though, Mr. Stern, because it's very

18  incomplete information.  So --

19          THE INTERPRETER:  (Interpreting for proposed

20  surety.)

21          THE COURT:  -- I don't know that that has any

22  impact on this Court's analysis.

23          THE INTERPRETER:  (Interpreting for proposed

24  surety.)

25          MR. STERN:  Okay.  With respect to his

22

1  connections, Ms. Fryzek argued that none of his connections

2  resulted in sales in China, but that doesn't undermine, one,

3  the weight of the evidence, nor does it mean that he

4  couldn't use those connections to attempt to flee.

5           THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7           MR. STERN:  And it is clear that Mr. Li was in

8  communication with numerous people in China.

9           THE INTERPRETER:  (Interpreting for proposed

10 surety.)

11          MR. STERN:  Mr. Li's father and mother are both in

12 China.  That is all of his immediate family.

13          THE INTERPRETER:  (Interpreting for proposed

14 surety.)

15          MR. STERN:  While his fiancee is here, the

16 Government is concerned the fact that she is unwilling to be

17 a bail resource.  It will not provide -- she's unable to

18 provide an assurance that he will stay here rather than

19 leave to avoid these charges to a place where he cannot be

20 extradited.

21          THE INTERPRETER:  (Interpreting for proposed

22 surety.)

23          MR. STERN:  My understanding is that the company

24 that Mr. Li works for has connections to China with numerous

25 employees being lawful permanent residents here but -- but

23

with connections to China and also with the person who got

him the job there being someone who lives in China.

THE INTERPRETER:  (Interpreting for proposed
surety.)

MR. STERN:  So, in all, we have his father in
China, his mother in China, the other person he's closest
to, his fiancee, unwilling to be a bail resource.  And,
while it is admirable that his aunt is willing to be a bail
resource, she is all the way in Florida, and there is not
sufficient information to make clear that that would provide
him enough of a incentive to stay.

THE INTERPRETER:  (Interpreting for proposed
surety.)

MR. STERN:  As soon as Mr. Li is released, if he
wanted to, he could cross the land border to Mexico and fly
to China.

THE COURT:  Without a passport?

MR. STERN:  Without a passport.  Well, he probably
-- it might be more difficult for him to fly from Mexico to
China without a passport.

THE COURT:  Right.

MR. STERN:  But he could obtain a passport while
he's there in Mexico and fly to China.

THE INTERPRETER:  (Interpreting for proposed
surety.)

24

1          MR. STERN:  And, given his connections to China,

2  he could also seek to obtain a Chinese passport in a

3  different name that he could use to fly from here to China.

4          THE INTERPRETER:  (Interpreting for proposed

5  surety.)

6          MR. STERN:  All of this shows by a preponderance

7  of the evidence that Mr. Lee is more likely to flee to China

8  than to stay and appear in this case.

9          THE INTERPRETER:  (Interpreting for proposed

10 surety.)

11         THE COURT:  Okay.  Any final response from the

12 Defendant?

13         THE INTERPRETER:  (Interpreting for proposed

14 surety.)

15         MS. FRYZEK:  The reason why the weight of the

16 evidence is to be one of the lease important factors for the

17 Court to consider is because the Court is not supposed to

18 make determinations of guilt pretrial.  Mr. Li --

19         THE INTERPRETER:  (Interpreting for proposed

20 surety.)

21         MS. FRYZEK:  I think it is clear from the

22 indictment itself that Mr. Li was not imagined to be the

23 mastermind of the scheme.

24         THE INTERPRETER:  (Interpreting for proposed

25 surety.)

25

1          MS. FRYZEK:  Mr. Ho is charged with additional

2    counts that do not include Mr. Li.

3          THE INTERPRETER:  (Interpreting for proposed

4    surety.)

5          MS. FRYZEK:  Mr. Stern spoke about the fact that

6    Mr. Li's connections through his father never resulted in

7    sales.  The reason I raised that is because the Government

8    argued that Mr. Li has such strong connections to the CCP,

9    and I do not believe Mr. Li does have a strong connection or

10   allegiance to the CCP.  I don't think there's any clear

11   indication he was even in touch directly with people from

12   the CCP.  I don't have the benefit of the full discovery,

13   but that's my understanding at this point.

14         THE INTERPRETER:  (Interpreting for proposed

15   surety.)

16         MS. FRYZEK:  When Mr. Li was born, he was born in

17   Hong Kong.  Hong Kong was under British control.

18         THE INTERPRETER:  (Interpreting for proposed

19   surety.)

20         MS. FRYZEK:  That is no longer the case, but he

21   specifically chose to be in the United States and did that

22   lawfully.

23         THE INTERPRETER:  (Interpreting for proposed

24   surety.)

25         MS. FRYZEK:  I struggle to imagine how, if he

26

1 turns in his passport, he would be able to get to Mexico,

2 get a passport there and fly to China.

3          THE INTERPRETER:  (Interpreting for proposed

4 surety.)

5          MS. FRYZEK:  I'm not familiar with how that would

6 work.

7          THE INTERPRETER:  (Interpreting for proposed

8 surety.)

9          MS. FRYZEK:  I will tell the Court he does have a

10 Real ID which he would use to travel to Florida for court.

11          THE INTERPRETER:  (Interpreting for proposed

12 surety.)

13          MS. FRYZEK:  And his fiancee did attend and is

14 here today in court and has brought his passport with her.

15          THE INTERPRETER:  (Interpreting for proposed

16 surety.)

17          MS. FRYZEK:  So, I believe there are conditions

18 that could reasonably assure this Court that Mr. Li will

19 appear for court in Tampa as directed.

20          THE INTERPRETER:  (Interpreting for proposed

21 surety.)

22          THE COURT:  Okay.

23          MR. STERN:  Your Honor, may I briefly respond?

24          THE COURT:  Very briefly, please.

25          THE INTERPRETER:  (Interpreting for proposed

27

1  surety.)

2         MR. STERN:  Very briefly.  The Government isn't

3  asking the Court to make any determination of guilt.  The

4  Government is just asking how Mr. Li will react with this

5  weight of the evidence and facing over 10 years in prison.

6         THE INTERPRETER:  (Interpreting for proposed

7  surety.)

8         MR. STERN:  Mr. Li chose to live in the United

9  States, but the calculus changes when the United States is

10  seeking to punish him for these crimes for which the penalty

11  is significant.  And perhaps things have changed since I've

12  last gone to Mexico by land, but I don't believe you need a

13  passport to cross the land border.

14         THE INTERPRETER:  (Interpreting for proposed

15  surety.)

16         THE COURT:  Okay.  So, I am in agreement with

17  Pretrial Services that there are conditions that the Court

18  can impose to address risk of flight.  I do agree with the

19  Government that Mr. Li does pose a risk of flight.

20         THE INTERPRETER:  (Interpreting for proposed

21  surety.)

22         THE COURT:  But the question is whether there are

23  any conditions or combination of conditions that can

24  reasonably assure his appearance.

25         THE INTERPRETER:  (Interpreting for proposed

28

1   surety.)

2          THE COURT:  As the Pretrial Services Report

3   indicates --

4          THE INTERPRETER:  (Interpreting for proposed

5   surety.)

6          THE COURT:  -- Mr. Li has no criminal history.

7          THE INTERPRETER:  (Interpreting for proposed

8   surety.)

9          THE COURT:  And there's nothing else in his

10  history to suggest he would disregard orders and flee from

11  dealing with this case.

12         THE INTERPRETER:  (Interpreting for proposed

13  surety.)

14         THE COURT:  If the fact that he has financial

15  means to flee and that he has international ties was enough

16  to detain him, then everyone charged with offenses that

17  carry some potential sentences if they're convicted would be

18  an unmitigable flight risk, and I just feel that I have

19  sufficient evidence in this report to fashion conditions of

20  release.

21         THE INTERPRETER:  (Interpreting for proposed

22  surety.)

23         MR. STERN:  Your Honor, just --

24         THE COURT:  Hold on a second.  That said, I'm

25  concerned about the fact that the person that he's engaged

29

1  to and lives with is unwilling to sign a bond for his

2  release.

3          THE INTERPRETER:  (Interpreting for proposed

4  surety.)

5          THE COURT:  And it will take -- there is a process

6  requirement for securing the bond with his residence which

7  is recommended by Pretrial Services, and I also agree with

8  that.

9          THE INTERPRETER:  (Interpreting for proposed

10 surety.)

11         THE COURT:  And, so, Mr. Stern, you were saying?

12         THE INTERPRETER:  (Interpreting for proposed

13 surety.)

14         MR. STERN:  Yes, your Honor.  I just wanted to let

15 you know that the Middle District of Tennessee, if he was

16 going to be --

17         THE COURT:  Tennessee?

18         MR. STERN:  Sorry.  Middle District of Florida had

19 asked that to the extent he's ordered released, that the

20 decision be stayed until 3 p.m. tomorrow to allow them to

21 seek a stay with the District Judge.  I just didn't want to

22 spring that --

23         THE COURT:  Right.

24         MR. STERN:  -- on you at the end.  I know there's

25 more to discuss.

30

1         THE COURT:  Right.

2         THE INTERPRETER:  (Interpreting for proposed

3 surety.)

4         THE COURT:  Right.  And I figured that might be

5 the case, and different districts handle these kinds of

6 matters differently.  And in some districts, people are

7 detained more often than in this District and for different

8 reasons.  I don't know what the reasons were for some of the

9 Defendants who have been detained because I haven't seen the

10 Pretrial Report for those people or their criminal histories

11 or lack thereof or whatever the circumstances were that were

12 considered for those people who were detained versus the one

13 person who wasn't.

14    But this person that's before me right now has ties to

15 the United States, has a maternal aunt who's here appearing

16 for him and willing to put herself at great financial risk

17 to sign on a bond for him, and he has a home that has great

18 value to him that he's managed to own and live in in San

19 Leandro, and that would be on the line as well.  And there's

20 just nothing in his history to suggest that he would risk

21 losing that and also risk causing financial harm to his

22 aunt.

23    But, like I said, I am concerned about the fiancee who

24 he lives with not being willing to stand up for him.  That

25 tells me a lot because she knows him more than I do.

31

1          THE INTERPRETER:  (Interpreting for proposed
2 surety.)
3          THE COURT:  So, what I'm going to propose is that
4 we continue this because it is very late, and I do have a
5 civil calendar at 1:30.  And what --
6          THE INTERPRETER:  (Interpreting for proposed
7 surety.)
8          THE COURT:  And, so, what I would consider would
9 be a -- I would consider sign -- sign a bond that had his
10 aunt and his fiancee, which is -- Pretrial Services'
11 recommendation was just that his fiancee sign actually.  But
12 if they both signed the bond and he goes through the steps
13 to post the equity in his residence, which Pretrial Services
14 suggests he has a lot of equity in the home based on his
15 monthly payment, and if you can get that done or at least
16 have it ready to be done and get the paperwork submitted for
17 posting the property, I would sign that.
18     So, what I would suggest maybe, Mr. Stern, is if that's
19 my tentative ruling, you could convey that to the charging
20 district, and then they can stay whatever I'm about to do.
21 And, you know, if -- if that would help facilitate things.
22 I don't know, but I -- you know, they may have their way of
23 dealing with things.
24     I could just say, you know, maybe he should go over
25 there in custody and have his hearing there, but a lot has

32

 1  been said here today on the record, and if they're going to

 2  review it, maybe they could benefit from having the

 3  transcript from today's proceedings because a lot was said.

 4  A lot was translated.  We have the aunt here.  And, so, I

 5  would think that they could benefit from having all of that

 6  information in the charging district.  And if they would be

 7  more inclined to, you know, detain him, that's their

 8  prerogative.

 9      But my analysis and based on the recommendation from

10  Pretrial Services is that there are conditions.  It's just

11  I'm not sure.  I mean, there's just still that one caveat

12  about the fiancee signing, which is what Pretrial Services

13  recommends.

14          THE INTERPRETER:  (Interpreting for proposed

15  surety.)

16          MR. STERN:  Your Honor, I'm not a hundred percent

17  sure of this, but I would think procedurally the AUSAs in

18  the Middle District of Florida can't seek a stay until

19  there's an order to seek a stay of.

20          THE COURT:  Right.

21          MR. STERN:  But I guess maybe the question I would

22  have for the Court is when it would like to continue this

23  until.

24          THE INTERPRETER:  (Interpreting for proposed

25  surety.)

33

1          THE COURT:  We can could come back on Friday.  I

2   know it's a holiday, but --

3          THE INTERPRETER:  (Interpreting for proposed

4   surety.)

5          THE COURT:  -- I'm not going anywhere.

6          THE INTERPRETER:  (Interpreting for proposed

7   surety.)

8          THE COURT:  I'm still on duty.

9          MS. FRYZEK:  So, if I may provide some

10  information.

11         THE COURT:  Yes.

12         MS. FRYZEK:  I think there will be challenges with

13  posting the secured bond while Mr. Li is in custody, and

14  there are a couple of reasons for that.

15         THE COURT:  Why?

16         MS. FRYZEK:  The first is that his fiancee looked

17  for his deed of trust, a physical copy, but could not find

18  it at the home.  He has -- he believes he has an electronic

19  copy, but he can't sign into that account while in custody,

20  and it has two factor authentication with his cell phone,

21  which is in booking to my understanding.

22     He will also need to then sign a notarized document

23  signing over the value in the home to the Court, and that

24  would mean that we need to get a notary with him to sign it.

25  I have serious doubts that we would be able to accomplish

34

1  that over the Thanksgiving holiday.

2      I'm wondering if the Court would consider, given where

3  everything is, ordering him released on home confinement

4  today with the surety who is available on Zoom,

5  understanding the Government will seek a stay, with the

6  intention that he be released to home confinement and make

7  the arrangements to sign over the secured bond within two

8  weeks or something to that effect.

9          THE COURT:  No.  I'm not inclined to do that,

10  especially given the person who he actually resides with

11  won't sign.  So --

12          THE INTERPRETER:  (Interpreting for proposed

13  surety.)

14          MS. FRYZEK:  My thinking is that that would give

15  the Government something they could appeal.  And then if

16  that results in him remaining in custody, he has not gone

17  through all of the work of attempting to post it.

18          THE COURT:  I understand that.

19          THE INTERPRETER:  (Interpreting for proposed

20  surety.)

21          THE COURT:  But I would like for them to appeal an

22  actual order that I'm comfortable with as opposed to some

23  other partial thing.

24          THE INTERPRETER:  (Interpreting for proposed

25  surety.)

35

1          THE COURT:  So, that's why that option doesn't
2  work for the Court.
3          THE INTERPRETER:  (Interpreting for proposed
4  surety.)
5          THE COURT:  There have been other defendants in
6  custody who have posted property to get released, and their
7  attorneys just facilitate the process and get it done, and
8  then they get released.
9          THE INTERPRETER:  (Interpreting for proposed
10  surety.)
11          THE COURT:  If we need more time, then I can
12  specially set -- as much as I would like to avoid doing
13  that, I can specially set a date to give you more time.
14          MS. FRYZEK:  Thank you.
15          THE INTERPRETER:  (Interpreting for proposed
16  surety.)
17          THE COURT:  So, Ms. Fryzek, maybe you want to
18  think of how much time you need to try to deal with all of
19  those issues.
20          MS. FRYZEK:  I heard the Court set another matter
21  for December 2nd.
22          THE COURT:  Yes.
23          MS. FRYZEK:  Could we set it then?  If we are not
24  able to accomplish all of the paperwork, we'll at least have
25  an update for the Court.

36

1          THE COURT:  Yes.

2          THE INTERPRETER:  (Interpreting for proposed

3 surety.)

4          THE COURT:  Okay.  Will that work for you, Mr.

5 Stern?

6          MR. STERN:  Yes, your Honor.

7          THE COURT:  Okay.

8          THE INTERPRETER:  (Interpreting for proposed

9 surety.)

10          THE COURT:  So, December 2nd we'll have a

11 continued detention hearing --

12          THE INTERPRETER:  (Interpreting for proposed

13 surety.)

14          THE COURT:  -- in this matter.  And maybe you can

15 talk a little bit more with Ms. Lau to find out what's going

16 on with that.

17          THE INTERPRETER:  (Interpreting for proposed

18 surety.)

19          THE COURT:  As well as the rest of it in terms of

20 the -- securing the bond.

21          THE INTERPRETER:  (Interpreting for proposed

22 surety.)

23          MS. FRYZEK:  yes, your Honor.

24          THE INTERPRETER:  (Interpreting for proposed

25 surety.)

37

1          THE COURT:  Okay.  So, then I'll see you back here
2  on the 2nd at 10:30.
3          THE INTERPRETER:  (Interpreting for proposed
4  surety.)
5          THE COURT:  And I'll keep all my notes so I
6  remember everything that's been proffered today.
7          THE INTERPRETER:  (Interpreting for proposed
8  surety.)
9          THE CLERK:  And, your Honor, I -- just in case
10  we're not in this courtroom for whatever reason, I will
11  issue a clerk's notice if the courtroom is -- is not this
12  one on the -- on the case document.
13          MS. FRYZEK:  If I may, would the Court like for
14  our surety to appear via Zoom again at the next hearing?
15          THE COURT:  Yes.
16          THE INTERPRETER:  (Interpreting for proposed
17  surety.)
18          THE COURT:  You are a very excellent
19  interpreter --
20          THE INTERPRETER:  Thank you.
21          THE COURT:  -- as well.  It's amazing.
22          THE INTERPRETER:  Thank you, your Honor.
23          ALL:  Thank you, your Honor.
24          THE COURT:  Okay.  Thank you.
25       (Proceedings adjourned at 1:06 p.m.)

38

CERTIFICATE OF TRANSCRIBER

1

2

3     I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9     I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16

17         Echo Reporting, Inc., Transcriber

18             Tuesday, December 9, 2025

19

20

21

22

23

24

25