1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3      Before The Honorable Kandis A. Westmore, Magistrate Judge

4

5   UNITED STATES OF AMERICA,        )
                                     )
6              Plaintiff,            )
                                     )
7   vs.                             )    No. 4:25-MJ-71375-MAG-1
                                     )
8   CHAM LI,                         )
                                     )
9              Defendant.            )
    _____)

10
                                    Oakland, California
11                                  Tuesday, December 2, 2025

12
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13      RECORDING 10:37 - 12:03 = 1 HOUR and 26 MINUTES

14  APPEARANCES:

15  For Plaintiff:
                                    United States Department of
16                                     Justice
                                    United States Attorneys Office
17                                  450 Golden Gate Avenue
                                    11th Floor
18                                  San Francisco, California
                                       94102
19                             BY:  NOAH STERN, ESQ.

20  For Defendant:
                                    Federal Public Defender
21                                  1301 Clay Street
                                    Suite 1350N
22                                  Oakland, California 94612
                               BY:  ANGELA HANSEN, ESQ.
23
    Transcribed by:                 Echo Reporting, Inc.
24                                  Contracted Court Reporter/
                                    Transcriber
25                                  echoreporting@yahoo.com

2

1   <u>Tuesday, December 2, 2025</u>                                    <u>10:37 a.m.</u>

2                       P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4           THE CLERK:  Calling the first matter on specially

5   set calendar for 25-MJ-71375 for U.S.A. versus Cham Li.

6       If I can have appearances, starting with counsel for

7   the Government.

8           THE INTERPRETER:  (Interpreting for proposed

9   surety.)

10          MR. STERN:  Good morning, your Honor.  Noah Stern

11  on behalf of the United States.

12          THE COURT:  Good morning.

13          MS. HANSEN:  Good morning.  Angela Hansen standing

14  in for Katherine -- sorry -- Ms. Fryzek on behalf of Mr. Li,

15  who is present and in custody.

16          THE INTERPRETER:  (Interpreting for proposed

17  surety.)

18          THE COURT:  So, good morning, and good morning,

19  Mr. Li.

20          THE INTERPRETER:  (Interpreting for proposed

21  surety.)

22          OFFICER AUSTIN:  And good morning, your Honor.

23  Amaryllis Austin, U.S. Pretrial.

24          THE COURT:  Good morning.

25          THE INTERPRETER:  (Interpreting for proposed

3

1  surety.)

2      THE COURT:  Okay.  So, this is a continuation of

3  the detention hearing in this matter.

4      THE INTERPRETER:  (Interpreting for proposed

5  surety.)

6      THE COURT:  I'm not going to repeat all of my

7  findings that I stated on the record at the previous

8  hearing, but to recap, there -- we do have the Pretrial

9  Services Report with the bail study that recommends that Mr.

10  Li be ordered released on a $75,000 bond secured by equity

11  in his residence and cosigned by his fiancee Liserin Lau,

12  with six special conditions of release.

13      And after argument of the parties, the Court agreed

14  with Pretrial Services' recommendation but altered it a bit

15  to require that he have two cosigners.  So, he would have

16  his aunt -- I think it's his aunt in Florida, right -- Ms.

17  -- yeah, Ms. Cua, Helen Cua, and she is here?  Okay.  Yes.

18  And she lives in Tampa, Florida and agreed to be his

19  custodian and cosigner and I guess to be his custodian when

20  he's in Florida for court purposes, that's where he can

21  reside.

22      I guess I should give you a chance to --

23      THE INTERPRETER:  Thank you, your Honor.  Thank

24  you for the courtesy.

25      (Interpreting for proposed surety.)

4

1          THE COURT:  Okay.  That was a lot.  Thank you.

2          THE INTERPRETER:  No worries.

3          THE COURT:  And the Government indicated at the

4    last hearing that the AUSA I believe in the charging

5    district would want to have a stay of any release order so

6    that they can appeal to a District Judge, I guess the duty

7    District Judge there in the Middle District of Florida.  And

8    I think it makes sense.  I mean, I think we have to go

9    through this process, and -- but I do think the stay makes

10   sense.

11          THE INTERPRETER:  (Interpreting for proposed

12   surety.)

13          THE COURT:  Okay.  And the reason why I think the

14   stay makes sense is because this is a case that belongs to

15   the Middle District of Florida, and that District Judge is

16   ultimately going to decide whether or not to uphold my

17   release order and will probably stay my order anyway.  And,

18   so, just as a practical matter, it makes sense, not because

19   I believe my decision is in any way incorrect under the Bail

20   Reform Act, but for practical reasons.

21          THE INTERPRETER:  (Interpreting for proposed

22   surety.)

23          THE COURT:  And, so, Ms. Hansen, I know you are

24   filling in for Ms. Fryzek.  I'm not sure how difficult that

25   is for you since you weren't here for the first part of the

5

1    proceedings, but my understanding is that you do have all of

2    what Ms. Fryzek intended to be able to bring today?

3           MS. HANSEN:  What I have today is his aunt on the

4    phone, who's prepared to cosign and be a custodian, and his

5    partner, Ms. Lau, who's in court, who is also willing to be

6    a cosigner.  The property package will be complete this

7    afternoon.  Once we receive the title report, I will send it

8    to Government counsel to ensure that it complies with the

9    general order.  Once they sign off on it, the deed will be

10   filed, and we will record it with -- it will be recorded,

11   not filed, and then we will submit it to the clerk's office

12   and notify your Honor that it's finalized.  And then I think

13   at that point your Honor would sign the release order, and

14   then it would be stayed per your Honor's ruling but could we

15   ask for a 48-hour or 24-hour stay to give them time to seek

16   a stay in that District?

17          THE INTERPRETER:  (Interpreting for proposed

18   surety.)

19          THE COURT:  Okay.  Thank you.

20          THE INTERPRETER:  (Interpreting for proposed

21   surety.)

22          THE COURT:  So, I guess before I proceed, are

23   there any further remarks to be made by the Government?

24          MR. STERN:  Your Honor, I -- I don't want to

25   relitigate anything.  I think there are two things I would

6

1  ant to raise.  One is that Ms. Cua, the Defendant's aunt,

2  said that the home she lives in is owned by her I believe,

3  but I would ask the Court to inquire as to whether she or

4  her husband owns the home or what form the home is owed in

5  -- owned in.

6       And, second, I don't think that there has been any --

7  or at least I haven't seen anything relating to the

8  Defendant's fiancee's financial ability to be a qualified

9  surety.

10           THE INTERPRETER:  (Interpreting for proposed

11  surety.)

12           THE COURT:  I think that that's a reasonable

13  inquiry.  So, I will address that with Ms. Cua.

14       Also, good point on the fiancee.  It's interesting

15  because she is included in the Pretrial Services Report as

16  the person who's corroborating all of the information

17  regarding Mr. Li, but -- and she was recommended, I mean, as

18  Pretrial -- Pretrial Services recommended that she be the

19  one who sign the bond, but there isn't the usual provision

20  of information regarding Ms. Lau in the Pretrial Services

21  Report, and she was -- is a proposed cosigner.

22       Do we know why that is?

23           OFFICER AUSTIN:  I don't, your Honor.  I don't

24  know if it accidentally was deleted or if -- if there was an

25  accidental oversight.

7

1          THE COURT:  Okay.

2          OFFICER AUSTIN:  But, as defense counsel has

3   indicated, I believe she's here in the courtroom.  So, I'm

4   happy to take a few minutes and obtain that information if

5   your Honor would --

6          MS. HANSEN:  Your Honor, she is gainfully

7   employed, and I'm sure when she comes up to speak with the

8   Court, she can explain how much she earns per month.

9          THE COURT:  Okay.

10         THE INTERPRETER:  (Interpreting for proposed

11  surety.)

12         THE COURT:  Okay.  So, I think we can address

13  these questions by having the two proposed cosigners come

14  up, and then I can ask the necessary questions.

15      So, if we get -- can we get Ms. Lau to please come

16  forward.

17         THE INTERPRETER:  (Interpreting for proposed

18  surety.)

19         THE COURT:  There's a microphone there, Ms. Lau.

20  if you could just speak into the microphone and state your

21  full name, please.

22         MS. LAU:  My full name is Liserin Irene Lau.

23         THE COURT:  Oh, it's pronounced Lau?

24         MS. LAU:  Yes.

25         THE COURT:  Okay.  Sorry about that.

8

1        THE INTERPRETER:  (Interpreting for proposed
2  surety.)
3        THE COURT:  Okay.  All right.  And did Pretrial
4  Services get some new information?  I just was asking based
5  on what just happened.
6        OFFICER AUSTIN:  Yes, your Honor, but related to
7  the next case.
8        THE COURT:  Oh, okay.
9        OFFICER AUSTIN:  Apologies.
10       THE COURT:  Ms. Lau, you have been present during
11 these proceedings.  I saw you were in the courtroom at the
12 first phase of this detention hearing.  And, so, you've
13 heard all of the arguments that have been made by both
14 sides, and you also, I would imagine, recall me state --
15 nothing in the Pretrial Services Report, I believe it was,
16 that you did not want to be a cosigner on the bond at the
17 time.  Pretrial Services recommended you as the cosigner,
18 but you did not want to sign on the bond.  And Ms. Fryzek
19 explained that it had something to do with media involvement
20 or something like that, and you didn't want to have a part
21 in that.
22     So, the fact that you are here this morning and willing
23 to sign suggests you have changed your mind.  Is that
24 correct?
25       MS. LAU:  Yes.

9

1            THE COURT:  All right.  Can you tell me a little
2    bit more about your reasons for initially not -- sorry.  Let
3    him translate first.

4            THE INTERPRETER:  Thank you, your Honor.

5            (Interpreting for proposed surety.)

6            MS. LAU:  So, I'm like a very private person.  I
7    don't like my name being in public as in like in -- online,
8    like you can search for people's information.  My name is
9    very unique, and that's the reason why I'm scared of the
10   media, and there was some media attention or at least a
11   release of this case outside.  And, so, that's why initially
12   I declined, mainly because I was -- I was scared.

13       But as the days have gone by and I have attended a few
14   of these hearings, I decided to change my mind because I
15   trust -- I trust Tony to do the right thing, to show up to
16   court, and -- and that's the reason why I changed my mind.

17           THE COURT:  Okay.

18           THE INTERPRETER:  (Interpreting for proposed
19   surety.)

20           THE COURT:  Okay.  I appreciate your explanation,
21   and I understand your fear of being in the media and having
22   your name out there and how that may feel.

23           Interpreter, you can go ahead.

24           THE INTERPRETER:  Thank you, your Honor.

25       (Interpreting for proposed surety.)

10

1     THE COURT:  All right.  The purpose of having

2 somebody like you who is his significant other -- you are

3 engaged to be married, is that right?

4     MS. LAU:  Yes.

5     THE COURT:  So, the purpose of having somebody as

6 close to him as you sign on the bond is to have somebody who

7 knows him well vouch for him and say what you just said,

8 which is that you believe he will show up as ordered and

9 that you will also give him a strong incentive to comply

10 with all of the conditions of his release because you have

11 put yourself out there on the line for him.

12     THE INTERPRETER:  Thank you, your Honor

13     (Interpreting for proposed surety.)

14     THE COURT:  So, Ms. Lau, how long have you known

15 Mr. Li?

16     MS. LAU:  Over three years.

17     THE COURT:  Okay.  And you've been in a

18 relationship with him for how long, for that same length of

19 time?

20     MS. LAU:  Yes.

21     THE COURT:  Okay.  And when did you become engaged

22 to be married?

23     MS. LAU:  We were engaged last year in December.

24     THE COURT:  Okay.

25     THE INTERPRETER:  (Interpreting for proposed

11

1  surety.)

2          THE COURT:  Do you have a wedding date?

3          MS. LAU:  Yes.

4          THE COURT:  What is that?

5          MS. LAU:  February 22nd of 2026.

6          THE COURT:  Oh, so, it's coming up pretty quickly.

7  Okay.

8          THE INTERPRETER:  (Interpreting for proposed

9  surety.)

10          THE COURT:  You've heard about the charges that

11  are -- have been brought against Mr. Li, right?

12          MS. LAU:  Yes.

13          THE INTERPRETER:  (Interpreting for proposed

14  surety.)

15          THE COURT:  And you have heard the maximum

16  penalties he faces if he's convicted, the maximum penalties

17  he faces, not necessarily the actual penalties he would

18  receive if convicted, but you understand that?

19          MS. LAU:  Yes.

20          THE INTERPRETER:  (Interpreting for proposed

21  surety.)

22          THE COURT:  And are you living in the -- in Mr.

23  Li's home currently?

24          MS. LAU:  Currently (Zoom glitch).

25          THE COURT:  And why are you afraid to go there?

12

1          MS. LAU:  Because I'm just by myself there.  So,

2  it's lonely.  And, so, I wanted to be with my family.

3          THE COURT:  Okay.

4          THE INTERPRETER:  (Interpreting for proposed

5  surety.)

6          THE COURT:  What kind of house is it?  Is it a big

7  house?  How many bedrooms?

8          MS. LAU:  It's a single family home with three

9  bedrooms.

10          THE COURT:  Okay.

11          THE INTERPRETER:  (Interpreting for proposed

12  surety.)

13          THE COURT:  Do you know how long he's owned -- Mr.

14  Li has owned the house?

15          MS. LAU:  He's owned it since I've been with him.

16          THE COURT:  Um-hmm.

17          MS. HANSEN:  2020.

18          MS. LAU:  Yeah.  So, I think he bought it around

19  like 2020.

20          THE COURT:  Okay.

21          THE INTERPRETER:  (Interpreting for proposed

22  surety.)

23          THE COURT:  And, so, you've heard some of the

24  Government's arguments about why they believe he is a risk

25  of flight and some of the possibilities that they proposed

13

1  for ways that he might try to flee even if the Court takes

2  his passport.  I just wanted to get a sense of what your

3  thoughts are about that and whether or not you think he

4  would do something like that?

5          MS. LAU:  No, I don't think so.

6          THE INTERPRETER:  (Interpreting for proposed

7  surety.)

8          THE COURT:  Can you tell me a little bit about why

9  you believe he wouldn't do that?

10         MS. LAU:  I trust him enough to not run away from

11  -- from this case and to -- to go through with it to the

12  end.  He's a pretty responsible person, like, from what I've

13  seen him.  And, so, I don't think he would flee and run

14  away.

15         THE INTERPRETER:  (Interpreting for proposed

16  surety.)

17         THE COURT:  Okay.  And -- oh, and can you tell me

18  your age?

19         MS. LAU:  38.

20         THE COURT:  Okay.  And are you a U.S. citizen?

21         MS. LAU:  Yes.

22         THE INTERPRETER:  (Interpreting for proposed

23  surety.)

24         THE COURT:  And before all of this happened, you

25  were living with him in his home full time, right?

14

1          MS. LAU:  Yes.  I only started living with him

2     together for -- since September.

3          THE COURT:  Okay.

4          THE INTERPRETER:  (Interpreting for proposed

5     surety.)

6          THE COURT:  If he is released and he's allowed to

7     live here and travel to Florida when he needs to go to

8     court, would you move back in with him?  Would you be living

9     with him again?

10         MS. LAU:  Eventually.

11         THE INTERPRETER:  (Interpreting for proposed

12    surety.)

13         THE COURT:  So, it sounds like it's not a sure

14    thing?

15      (Pause.)

16         THE COURT:  I would imagine this case makes it

17    difficult.

18         MS. LAU:  Yes, the case makes it a little

19    difficult, and I don't know if the Judge will even let him

20    out on bond.

21         THE COURT:  Right.  I mean, I don't know either

22    ultimately.  I mean, I may come up with conditions of

23    release.  But in Florida, they may decide not to allow him

24    out.  So, anything could happen, but I'm just saying if he

25    is allowed to remain out of custody to handle this case out

15

1  of custody and live here and travel to Florida, do you

2  believe you would be back living with him?

3      (Pause.)

4          MS. LAU:  I'm not sure.

5          THE COURT:  And is that because of the nature of

6  the case that's -- that he's facing right now?  Is that what

7  the current concern is for you?

8          MS. LAU:  Yes.

9          THE COURT:  Okay.

10          THE INTERPRETER:  (Interpreting for proposed

11  surety.)

12          THE COURT:  But, even though you have those

13  feelings about the case, you would -- you still have faith

14  that he will show up to court as ordered?

15          MS. LAU:  Yes.

16          THE COURT:  And you are willing to sign a bond for

17  his release which the bond amount would have been -- would

18  be a $75,000 unsecured bond?

19          MS. LAU:  Yes.

20          THE COURT:  Okay.  Oh, go ahead.

21          THE INTERPRETER:  Thank you, your Honor.

22      (Interpreting for proposed surety.)

23          THE COURT:  Now, I'm not going to ask you for your

24  address and all that kind of personal information to put

25  that on the record because I -- that's your private

16

1  information.  It's something that you can provide without

2  stating it on the record.  But I do want to know if you are

3  gainfully employed?

4          MS. LAU:  I am employed.

5          THE COURT:  Okay.  And are you full-time employed?

6          MS. LAU:  Yes.

7          THE COURT:  Okay.

8          THE INTERPRETER:  (Interpreting for proposed

9  surety.)

10         THE COURT:  And what is your either monthly or

11 annual income?

12         MS. LAU:  After taxes, it's -- that hits in my

13 bank account is around $5,000 per month.

14         THE COURT:  Five.  Okay.

15         THE INTERPRETER:  (Interpreting for proposed

16 surety.)

17         THE COURT:  Okay.  And you said that's after

18 taxes?

19         MS. LAU:  After.

20         THE COURT:  Okay.  All right.  And how long have

21 you been employed at that -- at your current job?

22         MS. LAU:  Ten years.

23         THE COURT:  Okay.

24         THE INTERPRETER:  (Interpreting for proposed

25 surety.)

17

1          THE COURT:  And do you own any assets yourself,

2 any real property?

3          MS. LAU:  Yes.

4          THE COURT:  You do.  Okay.  Is that in California?

5          MS. LAU:  Yes.

6          THE INTERPRETER:  (Interpreting for proposed

7 surety.)

8          THE COURT:  Okay.  And, so, is it a home or a

9 multi-unit kind of property where you're the landlord?

10          MS. LAU:  It's a home.

11          THE COURT:  It's a home.  And you rent it out?

12          MS. LAU:  Yes.

13          THE COURT:  Okay.

14          THE INTERPRETER:  (Interpreting for proposed

15 surety.)

16          THE COURT:  And, so, I'm not going to ask you for

17 the address of that home.  I just want to know if you have

18 an idea of how much it's worth?

19          MS. LAU:  I actually don't remember how much it's

20 worth.

21          THE COURT:  How long have you owned it?

22          MS. LAU:  Since 2012.

23          THE COURT:  Okay.

24          THE INTERPRETER:  (Interpreting for proposed

25 surety.)

18

1          THE COURT:  So, you've owned it for a while.  So,

2   you could have build up some equity in that home?

3          MS. LAU:  Yes.

4          THE COURT:  Okay.

5          THE INTERPRETER:  (Interpreting for proposed

6   surety.)

7          THE COURT:  And that's a supplement to your income

8   from your job because you get rental income as well?

9          MS. LAU:  Uh, I do get rental income.

10         THE COURT:  Okay.

11         THE INTERPRETER:  (Interpreting for proposed

12  surety.)

13         THE COURT:  Okay.  And, lastly, do you have any

14  sort of criminal history yourself, arrests or charges,

15  convictions?

16      (No audible response.)

17         THE COURT:  No?  I couldn't hear you.

18         MS. LAU:  No.

19         THE COURT:  Okay.

20         THE INTERPRETER:  (Interpreting for proposed

21  surety.)

22         THE COURT:  Okay.  And how long have you lived in

23  California?

24         MS. LAU:  All my life.

25         THE INTERPRETER:  (Interpreting for proposed

19

1  surety.)

2      (Pause.)

3          THE COURT:  If he is allowed to remain out of

4  custody and go back to live in his home, which I believe

5  that was in San Leandro, is that right?

6          MS. HANSEN:  Yes.

7          THE COURT:  -- you -- would you be willing to also

8  help supervise him by being a custodian, like his aunt is

9  agreeing to do, you know, if -- when he goes to Florida?

10          MS. HANSEN:  Your Honor, could the Court provide

11  more explanation of the custodian?  We didn't prepare her

12  for that.

13          THE COURT:  Okay.  So, a custodian is someone who

14  agrees to help Pretrial Services supervise a Defendant,

15  which just means that if you discover that he is violating

16  any of the conditions of his release, that you agree to

17  report any such violation to Pretrial Services.

18          MS. HANSEN:  You don't have to follow him around.

19          THE COURT:  No.  You don't have to be with him 24

20  hours a day.  You don't have to, you know, stay by his side

21  all of the time.  It's just that in the course of your being

22  around him and interacting with him or living with him or

23  whatever the case may be, if you become aware of him

24  violating conditions of his release, that you would be

25  willing to report it to Pretrial Services?

*Echo Reporting, Inc.*

20

1      (Pause.)

2           THE COURT:  Could you do that?

3      (Pause.)

4           MS. LAU:  Yes, I could.

5           THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7           THE COURT:  Okay.  So, the other thing that I need

8  to advise you of is that this is a voluntary process.  You

9  are not required to sign the bond.  And -- but once you do,

10  if he does violate the conditions of his release, he -- you

11  know, like if he fails to appear in court like he's supposed

12  to or he violates other conditions of his release, the

13  Government could file a motion for a judgment against you

14  and him and the aunt, whoever's on the bond, for the full

15  amount of the $75,000 bond and collect that from you by

16  whatever California law allows for the collection on a

17  judgment, enforcement of judgments.  So, it could be

18  garnishing your wages and other sources of income,

19  intercepting tax refunds, things of that nature.

20           THE INTERPRETER:  (Interpreting for proposed

21  surety.)

22           THE COURT:  Do you understand that?

23           MS. LAU:  Yes.

24           THE COURT:  Okay.  And, so, once you're on the

25  bond, the only way to be removed is by a judge's order.  So,

21

1  if you decided to change your mind and no longer wanted to

2  be on the bond, you would have to come back to court and ask

3  to be removed.

4      Do you understand?

5          MS. LAU:  Yes.

6          THE INTERPRETER:  (Interpreting for proposed

7  surety.)

8          THE COURT:  And, so, in the interest of time, Ms.

9  Helen Cua, did you also understand the information I just

10 provided to Ms. Lau?

11         THE INTERPRETER:  (Interpreting for proposed

12 surety.)

13         MS. CUA (through interpreter):  Yes.

14         THE COURT:  Including, you know, what it means to

15 be a custodian as well as a cosigner on the bond?

16         THE INTERPRETER:  (Interpreting for proposed

17 surety.)

18         MS. CUA:  Yes.

19         THE COURT:  And you understand that it's voluntary

20 for you as well?

21         THE INTERPRETER:  (Interpreting for proposed

22 surety.)

23         MS. CUA:  Yes.

24         THE COURT:  Okay.  And I know Ms. Cua was here for

25 the first part of this whole detention hearing.  And, so,

22

1  she heard all of what took place during that first day.

2      And, so, we do need to talk about the details of, you

3  know, what the conditions of release are before I can

4  confirm with proposed cosigners whether or not that they

5  would still like to sign the bond.

6          THE INTERPRETER:  (Interpreting for proposed

7  surety.)

8          THE COURT:  Okay.  And I do find that both of the

9  proposed cosigners are good cosigners for this bond, for Mr.

10 Li.

11         THE INTERPRETER:  (Interpreting for proposed

12 surety.)

13         THE COURT:  All right.  So, I'm going to go over

14 what the proposed conditions are.  And, so, Ms. Cua and Ms.

15 Lau, you can let me know after I go through them if you have

16 any questions.

17         THE INTERPRETER:  (Interpreting for proposed

18 surety.)

19         THE COURT:  And this is for you, Mr. Li, too.  So,

20 these are the conditions of your proposed release.

21     So, as I already stated, it would be a secured $75,000

22 bond secured by Mr. Li's real property at the address he

23 provided in San Leandro.

24         THE INTERPRETER:  (Interpreting for proposed

25 surety.)

23

1          THE COURT:  And, so, Mr. Li, because you are

2   securing the bond with your real property, if you violate

3   the conditions of your release, the Government would be able

4   to foreclose on your property to collect the amount of the

5   bond, including interest and cost.

6      Do you understand that?

7      (No audible response.)

8          THE INTERPRETER:  (Interpreting for proposed

9   surety.)

10          THE COURT:  All right.  And, also, you would have

11   the judgment against -- you would get a judgment against you

12   likely for the full $75,000.  And, so, the Government could

13   also use other means to collect that amount.  In addition to

14   foreclosure, it could garnish your wages and other sources

15   of income as well.

16      Do you understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.

19          THE INTERPRETER:  (Interpreting for proposed

20   surety.)

21          THE COURT:  All right.  So, here are the

22   conditions.

23      The Defendant must appear at all proceedings as ordered

24   by the Court and must surrender for service of any sentence

25   imposed.

24

 1            THE INTERPRETER:  (Interpreting for proposed

 2 surety.)

 3            THE COURT:  He must not commit any federal, state

 4 or local crime.

 5            THE INTERPRETER:  (Interpreting for proposed

 6 surety.)

 7            THE COURT:  He must not harass, threaten,

 8 intimidate, injure, tamper with or retaliate against any

 9 witness, victim, informant, juror or officer of the court or

10 obstruct any criminal investigation.

11            THE INTERPRETER:  (Interpreting for proposed

12 surety.)

13            THE COURT:  He must submit to supervision by

14 Pretrial Services and must not -- and must report

15 immediately upon release and thereafter as directed to

16 Pretrial Services.

17            THE INTERPRETER:  (Interpreting for proposed

18 surety.)

19            THE COURT:  He must surrender any passports or

20 other travel documents to Pretrial Services by today.

21       And, Ms. Lau, I understand you have his passport?

22            MS. LAU:  Yes.

23            THE COURT:  Okay.  And, so, you're prepared to

24 turn that over to Pretrial Services?

25            MS. LAU:  Yes.

25

```
 1           THE COURT:  Okay.
 2           THE INTERPRETER:  (Interpreting for proposed
 3 surety.)
 4           THE COURT:  And he must not apply for other
 5 passports or other travel documents.
 6           THE INTERPRETER:  (Interpreting for proposed
 7 surety.)
 8           THE COURT:  He must not possess any firearm,
 9 destructive device or other dangerous weapon.
10           THE INTERPRETER:  (Interpreting for proposed
11 surety.)
12           THE COURT:  He must not use alcohol to excess, and
13 he must not use or possess any narcotic or other controlled
14 substance without a prescription.
15           THE INTERPRETER:  (Interpreting for proposed
16 surety.)
17           THE COURT:  That includes marijuana, which may be
18 legal under state law, but it is still illegal under federal
19 law.  So, you cannot use or possess it, Mr. Li.
20           THE INTERPRETER:  (Interpreting for proposed
21 surety.)
22           THE COURT:  He must continue to actively seek
23 employment or continue or start an education program
24 approved by Pretrial Services.
25           THE INTERPRETER:  (Interpreting for proposed
```

26

1  surety.)

2          THE COURT:  He must have no contact directly or

3  indirectly with any Co-Defendant outside the presence of

4  counsel.

5          THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7          THE COURT:  And for Ms. Lau and MS. Cua's

8  information, does the Government have the names of the Co-

9  Defendants?  I know one of them was Mr. Ho.

10          MR. STERN:  Yes, your Honor.  The names of the Co-

11  Defendants are Kwan Ming Ho (phonetic) aka Matthew Ho.

12          THE COURT:  Um-hmm.

13          MR. STERN:  Brian Curtis -- sorry.  Brian Curtis

14  Raymond and Jin Chen (phonetic), aka Harry Chen.

15          THE INTERPRETER:  (Interpreting for proposed

16  surety.)

17          THE COURT:  Okay.  And, Cindy, maybe we can put

18  those in the box just for future reference.

19          THE CLERK:  Yes, your Honor.

20          THE COURT:  So, when we say no contact, we mean of

21  any kind.  So, not via email, text, WhatsApp or any other

22  form of communication.

23      Do you understand that, Mr. Li?

24          THE DEFENDANT:  Yes.

25          THE INTERPRETER:  (Interpreting for proposed

27

1  surety.)

2          THE COURT:  He must not change his residence or

3  telephone number without prior approval of Pretrial

4  Services.

5          THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7          THE COURT:  And, so, for the next thing on the

8  custodian, I'm not going to state her personal information,

9  but we can write that in on the bond, that the Defendant

10 must remain in the custody of custodian, Ms. Lau.  So, we'll

11 put her name.

12         THE CLERK:  Full name, your Honor?

13         THE COURT:  Yes.  So, maybe she can give the

14 spelling all of that to you.

15         THE CLERK:  I have the spelling on the file.  I

16 just -- yeah.

17         THE COURT:  Oh, go ahead.

18         THE INTERPRETER:  Thank you, your Honor.

19         (Interpreting for proposed surety.)

20         THE COURT:  And, so, Ms. Lau, I'm assuming that

21 when I put the address in where he's going to be, I'm

22 assuming that's going to be at his address in San Leandro.

23 So, I guess I need some clarification from you because I

24 know you haven't been completely clear about whether or not

25 you would live there.  And if you didn't live there, would

28

1   be going there to visit him so that you could be a custodian

2   of his?

3          MS. LAU:  I may not be living with him, but I will

4   be stopping by and seeing him at his house.

5          THE COURT:  Okay.

6          THE INTERPRETER:  (Interpreting for proposed

7   surety.)

8          THE COURT:  And, so, that would be at his

9   residence at the address he provided in San Leandro.

10         THE INTERPRETER:  (Interpreting for proposed

11  surety.)

12         THE COURT:  The custodian must supervise Defendant

13  and report any violation of a release condition to Pretrial

14  Services.

15         THE INTERPRETER:  (Interpreting for proposed

16  surety.)

17         THE COURT:  A custodian who fails to do so may be

18  prosecuted for contempt.

19         THE INTERPRETER:  (Interpreting for proposed

20  surety.)

21         THE COURT:  And I might have failed to mention

22  that before.  So, that just means if you did learn that he

23  was in violation of the conditions of his release and then

24  didn't report it, then you could be charged with contempt of

25  court, which carries its own penalties.

29

1        Do you understand that?

2            THE CLERK:  Yes.

3            THE INTERPRETER:  (Interpreting for proposed

4   surety.)

5            THE COURT:  And, Ms. Cua, you have agreed to be

6   his custodian when he is residing in Florida, in Tampa, to

7   go to court proceedings, and you would -- so, I want to

8   confirm that you understand your obligation and the

9   consequences if you don't live up to that obligation as

10  well.

11           THE INTERPRETER:  (Interpreting for proposed

12  surety.)

13           MS. CUA:  Understood.

14           THE COURT:  Okay.  And, so, I think we have to

15  write down on the bond form, Cindy, that he is to be in the

16  custody of his custodian, Ms. Cua, at her address in Florida

17  when he's there for court proceedings.

18           THE INTERPRETER:  (Interpreting for proposed

19  surety.)

20           MS. CUA:  Yes.

21           THE COURT:  Okay.  And, so, Mr. Li, do you

22  understand that?  So, you really can only live in two

23  places.  You can't go stay somewhere else.  So, if you go to

24  Florida, you wouldn't be able to, for instance, stay in a

25  hotel, stay with a friend or something like that.  You would

30

 1 have to stay with your aunt.

 2     Do you understand?

 3          THE DEFENDANT:  Yes.

 4          THE COURT:  Okay.

 5          THE INTERPRETER:  (Interpreting for proposed

 6 surety.)

 7          THE COURT:  All right.  We're getting towards the

 8 end here.  So, he must comply with the following location

 9 restrictions.

10          THE INTERPRETER:  (Interpreting for proposed

11 surety.)

12          THE COURT:  He must not travel outside the

13 Northern District of California and the Middle District of

14 Florida.

15          THE INTERPRETER:  (Interpreting for proposed

16 surety.)

17          THE COURT:  And, so, Mr. Li, I -- I know you were

18 full-time employed at the time of your arrest.  Do you know

19 if you still have that job?

20          THE DEFENDANT:  I'm not sure.

21          THE COURT:  You're not so sure?

22     (No audible response.)

23          THE COURT:  But does that job require you to drive

24 outside of the -- East Bay?

25          THE DEFENDANT:  It's -- the job is in Milpitas,

31

1  your Honor.

2          THE COURT:  Which is -- that's considered still

3  the Bay Area.  So, it's okay.  That's the Northern District.

4  Okay.  Just checking on that.

5          THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7      (Pause.)

8          THE COURT:  Okay.  So, those are the conditions

9  that I have at this point.  Is there any comment or request

10  from the Government regarding the conditions?

11          MR. STERN:  No, your Honor.

12          THE COURT:  Okay.

13          THE INTERPRETER:  (Interpreting for proposed

14  surety.)

15      (Pause.)

16          THE COURT:  Okay.  So, Ms. Lau, you heard all --

17  you've heard the conditions of his release.  Are you still

18  prepared to sign the bond as his cosigner on a $75,000 bond

19  and as his custodian?

20          MS. LAU:  Yes.

21          THE COURT:  Okay.  And -- oh, go ahead.

22          THE INTERPRETER:  Thank you, your Honor.

23          (Interpreting for proposed surety.)

24          THE COURT:  And, Ms. Cua, you've heard all the

25  conditions of his release.  Are you prepared to still sign

32

1  as his co-signer on the $75,000 bond and as his custodian?

2          THE INTERPRETER:  (Interpreting for proposed

3  surety.)

4          MS. CUA:  Yes.

5          THE COURT:  Okay.  And, so, Ms. Cua, because you

6  are appearing remotely, I just want to ask you if I have

7  your permission to sign this bond on your behalf?

8          THE INTERPRETER:  (Interpreting for proposed

9  surety.)

10          MS. CUA:  Yes.

11          THE COURT:  All right.  So, then we'll just get

12  all of the required signatures, and then I'm sure there'll

13  be a stay, and we'll see what happens from there.

14      Oh, you did request that we give it 48 hours?  What

15  did --

16          MS. HANSEN:  That would be helpful.  I believe if

17  the Government approves the package, if we get it to them

18  today, they approve it by tomorrow, I believe the property

19  will be posted in the clerk's office by tomorrow afternoon.

20  And, so, perhaps we'll notify the Court.  Once the Court

21  signs the order, if the Court could do a 24 or 48-hour stay,

22  that would be appreciated.

23          THE COURT:  Okay.  What does the Government think

24  in terms of timing?

25          MR. STERN:  Your Honor, the AUSAs in the Middle

33

1  District of Florida requested that I ask the Court for a 48-

2  hour stay.

3         THE COURT:  Okay.  So, we'll do a 48-hour stay

4  after my signature.  So, once I receive confirmation that

5  the property is posted, then I'll sign the bond.  In the

6  meantime, we'll make sure we have the co-signers' signatures

7  and custodians' signatures.  And that will be 48 hours from

8  -- so, if it's tomorrow, it will be 48 hours from then.

9         THE INTERPRETER:  (Interpreting for proposed

10 surety.)

11        THE COURT:  Okay.  So, we can get this out.

12        THE CLERK:  May I clarify if your Honor -- does

13 your Honor want another hearing on this bond or leave

14 that --

15        THE COURT:  No.  I don't need another hearing.  I

16 think the parties will notify you, Cindy, once they have --

17 they've complied with the general order requirements for

18 posting the property.  And once that's confirmed by the

19 clerk, I'll sign it.

20        THE CLERK:  Okay.

21        THE COURT:  So, we don't need to come back for a

22 further hearing.

23        THE CLERK:  Yes, your Honor.

24        THE INTERPRETER:  (Interpreting for proposed

25 surety.)

34

1          (Pause.)

2          THE COURT:  And I also need to sign the removal

3  order removing him to the Middle District of Florida so he

4  can deal with the charges there.

5          THE INTERPRETER:  (Interpreting for proposed

6  surety.)

7          (Pause.)

8          THE COURT:  Yeah, in terms of the -- in terms of

9  the date of the appearance in the Middle District of

10  Florida, I think I'm going to sign the order saying TBD?

11          MR. STERN:  I think that's right, your Honor.

12  He's not going to make what was scheduled.  So, it will have

13  to be rescheduled.

14          THE COURT:  Right.  Okay.

15          MS. HANSEN:  So, your Honor, Ms. Lau asked me

16  about this.  I just want to put it on the record that he

17  does not need to appear in Florida on December 4th?

18          THE COURT:  Correct.

19          MS. HANSEN:  Okay.

20          THE INTERPRETER:  (Interpreting for proposed

21  surety.)

22          THE COURT:  So, finally, before we sign

23  everything, Mr. Li, I just want to make sure that I've

24  advised you that in addition to the financial consequences,

25  if you fail to appear or violate conditions of your release,

35

1  not only do you have the financial consequences, but your

2  release can be revoked, and you can be brought back into

3  custody, and you can be charged with additional crimes like

4  contempt of court and/or bail jumping, which carry their own

5  separate sets of penalties.

6      Do you understand that?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  All right.

9          THE INTERPRETER:  (Interpreting for proposed

10 surety.)

11         THE COURT:  Okay.  So, I think this looks good,

12 Cindy.

13         THE CLERK:  Okay.

14     (Pause.)

15         THE COURT:  Oh, Mr. Stern, I forgot to ask Ms. Cua

16 your question, which was how the ownership in her property

17 is.

18         THE INTERPRETER:  (Interpreting for proposed

19 surety.)

20         THE COURT:  Ms. Cua, can you tell me if it's you

21 or your husband who owns the home?

22         THE INTERPRETER:  (Interpreting for proposed

23 surety.)

24         MS. CUA:  It's jointly owned with my husband, your

25 Honor.

36

1           THE COURT:  Okay.  Thank you.

2           THE INTERPRETER:  (Interpreting for proposed

3   surety.)

4       (Pause to confer.)

5           THE COURT:  So, there's the removal order.

6       (Pause to confer.)

7           THE COURT:  So, as the Marshals just pointed out,

8   both orders are going to be stayed, the removal order as

9   well as the release order, because they need to know if he's

10  going to Florida in custody or if he's going on his own.

11  So, we'll just -- I signed it, but it's stayed pending

12  whatever happens.

13          MS. HANSEN:  Correction.  It would have been

14  terrible had he been transferred --

15          THE COURT:  Right.

16          MS. HANSEN:  -- before all of this was decided.

17  Thank you.

18          THE COURT:  Okay.  And, so, I -- I have the bond

19  signed by the Defendant and Ms. Lau, and I've signed for Ms.

20  Cua per her permission, and I also -- I will sign for myself

21  for his release once I get confirmation, and then that order

22  will be stayed for 48 hours, along with the removal order.

23  Okay.

24          THE INTERPRETER:  Thank you, your Honor.

25      (Interpreting for proposed surety.)

37

```
 1          THE COURT:  Okay.  And just lastly, Mr. Li, I hope
 2  you appreciate the support that you have from your aunt
 3  who's willing to put herself on the line when you are
 4  released.  She's willing to put herself on (Zoom glitch)
 5  release to the tune of $75,000, and that your fiancee, Ms.
 6  Lau, is also putting herself on the line financially.  And,
 7  you know, this is a very difficult situation for her.  She
 8  doesn't like having to be in this situation.  I'm sure that
 9  it's been painful for her.  So, I hope you fully recognize
10  the sacrifice that she's making by doing this for you.  I
11  hope that you will make sure that if you want to remain out
12  of custody on these conditions that I've set, that you honor
13  the sacrifices the two of them have made on your behalf.
14      Do you think you can do that?
15          THE DEFENDANT:  Yes, your Honor, more than words
16  can describe.
17          THE COURT:  Okay.
18          MR. STERN:  Your Honor?
19          THE COURT:  Yes.
20          MR. STERN:  One housekeeping issue to make sure
21  everything is clear.
22          THE COURT:  Okay.
23          MR. STERN:  I have the transfer order in my hands.
24  Is -- I just want to confirm that the Court's oral order
25  issuing the stay is sufficient for the Marshals or if the
```

38

1 Court will --

2      THE COURT:  Yes, I think so.  That's why they were

3 asking me, right.  It's stayed, and I'm indicating on the

4 record that it's stayed.

5      UNIDENTIFIED SPEAKER:  And, so, that all the

6 orders, the release order, the bond, and the removal all

7 have been stayed.

8      MR. STERN:  Okay.  Understood.  I asked because it

9 looks like this will be filed on the docket.

10      THE COURT:  Maybe we can hold off on filing it

11 then, just like we're going to hold off on doing anything

12 with the order -- the -- this release order as well.  You

13 have it with my signature and everything, but just hold onto

14 it.  That way we don't create any confusion.

15      THE CLERK:  Sure.  But if I -- if I can clarify,

16 your Honor, if I do -- because it's submitted today, it will

17 be dated today.  Is that okay or does your Honor not want me

18 to file it?

19      THE COURT:  Yes, don't file it --

20      THE CLERK:  Okay.

21      THE COURT:  -- today.  That way we don't create

22 any errors in the clerk's office or any other sort of

23 confusion.

24      THE CLERK:  Yes, your Honor.

25      THE COURT:  Okay.

39

1          THE INTERPRETER:  (Interpreting for proposed
2 surety.)

3          THE COURT:  Okay.  So, I think -- I guess -- well,
4 yeah, that's it, because his next court day would have to be
5 in Florida, whenever that will be.  So, there's nothing more
6 for us to do at this point.

7          MS. HANSEN:  And Pretrial Services will still
8 accept his passport today?

9          THE COURT:  Yes.

10          MS. HANSEN:  Even though the order is not signed?

11          THE COURT:  Yes.

12          MS. HANSEN:  Thank you.

13          THE INTERPRETER:  (Interpreting for proposed
14 surety.)

15          THE COURT:  Right.  And then if my release order
16 is revoked, then, you know, he can get -- well, Ms. Lau can
17 get his passport back for him.

18          MS. HANSEN:  The property's reconveyed?

19          THE COURT:  Right.

20          THE INTERPRETER:  (Interpreting for proposed
21 surety.)

22          THE COURT:  Okay.  Thank you, everyone.  Thank
23 you, Ms. Cua.  Appreciate it.

24          THE INTERPRETER:  (Interpreting for proposed
25 surety.)

40

1          THE COURT:  Thank you.

2          MS. CUA:  Thank you.

3      (Proceedings adjourned at 12:03 p.m.)

41

## CERTIFICATE OF TRANSCRIBER

     I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
the official electronic sound recording provided to me by
the U.S. District Court, Northern District of California, of
the proceedings taken on the date and time previously stated
in the above matter.

     I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this hearing was taken; and, further, that I am not
financially nor otherwise interested in the outcome of the
action.


          Echo Reporting, Inc., Transcriber

          Tuesday, December 9, 2025