UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO: 8:25-cr-530-CEH-LSG

CHAM LI
_____/

**ORDER**

This matter comes before the Court on the United States' Motion to Revoke Order of Release (Doc. 43), filed on December 8, 2025. In the motion, the Government requests this Court enter an order revoking the release order of the Northern District of California Magistrate Judge, which permitted release, with conditions, of Defendant Cham Li pending trial. Hearings on the Government's motion were held December 31, 2025, and January 7, 2026. Defendant did not file a response to the motion,[1] but following the first hearing, Defendant filed character letters in support of his pretrial release. Doc. 77. The Court, having considered the motion, Defendant's filings, argument of counsel, and upon a de novo review of the record, finds there are conditions or combinations of conditions of release which reasonably will assure the appearance of the Defendant as required for Court proceedings. Therefore, the Court will deny the United States' Motion to Revoke Order of Release.

---

[1] At the December 31st hearing, the Court gave defense counsel the opportunity to request time to file a written response. Counsel declined, indicating that he would proceed based on the oral presentation and was not requesting additional time to file a written response.

I. **BACKGROUND**

On November 13, 2025, a Tampa Grand Jury returned an eighteen-count Indictment charging Defendant Cham Li ("Defendant" or "Li") and three co-defendants with conspiracy to violate and violations of the Export Control Reform Act, in violation of 50 U.S.C. § 4819; smuggling, in violation of 18 U.S.C. § 554; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and money laundering, in violation of 18 U.S.C. § 1956(a)(2). Doc. 1. The Indictment alleges that Li, a Chinese National living in California, was identified as a manager of Janford Realty, LLC,[2] a Florida company that served as an intermediary for several unlawful and unlicensed exports to the People's Republic of China ("China") of advanced and highly controlled U.S.-origin Graphics Processing Units (GPUs) with artificial intelligence ("AI") and supercomputing applications. *Id.* at 1–2. The GPUs being exported were, at the time,[3] on the United States' Commerce Control List (CCL) and were prohibited from being exported to China or otherwise required a license for export, which Defendants did not have. *Id.* at 4–5. It is alleged that Li and his co-defendants evaded United States export laws and regulations by transshipping the

---

[2] As discussed at the co-defendant Hon Ning Ho's recent hearing, Ho was the registered agent and co-manager of Janford Realty, LLC, a Florida limited liability company that was not involved in any real estate transactions, and instead, was used as a front to illegally export the NVIDIA GPUs to China. *See* Doc. 69.

[3] At the December 31, 2025 hearing, defense counsel represented that President Trump recently signed an executive order providing that certain GPUs, including the NVIDIA A100 and H200 chips at issue in the Indictment, may now be legally exported to China and a 25% tariff will be charged. Neither party could affirmatively state whether that executive order has gone into effect. Regardless, the Government argued that a license is still required, which Defendants did not have.

GPUs to China through third countries, including Malaysia and Thailand, using fake documentation. *Id.* at 9–10.

Defendant Li was arrested in the Northern District of California on November 19, 2025 (Doc. 33) and appeared before a magistrate judge on November 20. Doc. 51-1. A detention hearing was held on November 25, 2025 and was continued on December 2, 2025. Docs. 51-2, 51-3.

At the conclusion of the detention hearing, the magistrate judge entered an order on December 3, 2025, releasing Li from custody to appear in this District where the charges are pending. Doc. 38-3. An Order Setting Conditions of Release included, among others, the following conditions: $75,000 bond secured by Defendant's San Leandro, California home; surrender any passports and not apply for any others; no contact with co-defendants; remain in the custody of his fiancée Liserin Lau at his San Leandro, California home; must not travel outside of the Northern District of California or the Middle District of Florida; and remain in the custody of his aunt, Shan Ren (Helen) Cua at her Tampa home, while Defendant is in Florida. Doc. 38-5. The Government moved to stay the order granting pretrial release to seek review of that order in this Court, as permitted by 18 U.S.C. § 3145(a)(1). The magistrate judge stayed the order releasing Defendant and setting conditions of pretrial release to allow the Government to seek review. Doc. 38-4. On December 4, 2025, a Tampa magistrate judge extended the stay pending Defendant's removal to this District and directed the Government to file its brief in support of revoking the conditional release order by December 8, 2025. Doc. 39.

On December 8, 2025, the Government filed its motion to revoke the order of release. Doc. 43. The Government argues that Li should be detained because there are no conditions or combination of conditions that will assure the safety of the community and Li's appearance in future court proceedings. In support, the Government relies on detention orders pertaining to co-defendant Ho and Chen and the national security threat posed by the extremely serious allegations of exporting GPUs with immense processing power and supercomputing applications. The Government argues that Li poses the same, if not greater, risk of flight as Ho or Chen. When the scheme to smuggle NVIDIA GPUs into China was being developed, it was Li who boasted about his father's connections in China and his father's involvement in similar schemes. Li admitted his father's affiliation with the Chinese Communist Party and reported that his father and "Uncle Chien"[4] are business partners. Li admitted that his fiancée asked him to stop the illegal export business, but Li continued the illegal scheme as recently as a week prior to his arrest. With Li's post-*Miranda* admissions, the Government argues the evidence against Li is even more compelling than against his co-defendants Ho and Chen.

On December 31, 2025, Li was arraigned in Tampa, Florida. Doc. 73. Thereafter, this Court held a hearing on the Government's Motion to Revoke Order of Release. The Court extended the stay of detention pending a ruling on the

---

[4] Chien is Li's father's friend, who helped Li obtain his most recent employment, a job he held since 2013.

Government's motion. The Court heard additional argument on January 7, 2026, and permitted the presentation of additional evidence related to conditions of release.

## II.     HEARINGS BEFORE MAGISTRATE JUDGE WESTMORE

On November 20, 2025, Magistrate Judge Westmore conducted Rule 5 proceedings. Doc. 51-1. At the hearing, the Government requested Li be detained because he is a serious flight risk. In support, the Government argued the weight of the evidence against Li is strong, the charges involve serious offenses with national security implications, he has substantial ties to China, and the crimes he is alleged to have committed were for the benefit of China, a country that does not extradite. The Government explained that Li boasted about how his father had engaged in similar business on behalf of the Chinese Community Party and that is how the scheme was started. Li was interviewed by federal agents and he admitted to various facts that inculpated him in the charges. He is facing significant prison time and loss of permanent resident status, and he has the financial means to flee.

In response, the defense argued that Li has many connections to California having lived there since 2013. He has a fiancée with whom he is planning a wedding. They live together in a San Leandro home he bought in 2020. He has a full-time job that he's been working for since 2013. He also has significant ties to Florida with his mother's side of the family living in Florida. While he has traveled abroad, his travel is consistent with someone who has family living in another country. Defense counsel argues that Li wants to stay in this country. He has been cooperative with federal agents. He wants to be married and obtain his citizenship here. Defendant contends

he was not the ringleader or mastermind of the operation. He is willing to turn in his passport and use his home as collateral. Defendant requested a full detention hearing. The magistrate judge concluded that the Government made a compelling enough proffer to warrant a full bail study and detention hearing.

A continuation hearing was held November 25, 2025. Doc. 51-2. At the outset, Defendant waived identity and removal and pleaded not guilty as to all charges against him. Pretrial Services prepared a pre-bail report recommending Li be released on a $75,000 bond secured by the equity in his residence and co-signed by his fiancée with six additional special conditions. The Government filed a memorandum in support of detention arguing Li is a flight risk.

At the November 25, 2025 hearing, Defendant argued in response that Li has been in the country since 2007 and in California since 2013. He obtained a college degree while in the United States. Defense counsel reiterated arguments made at the initial hearing, including that Li owns his own home and has a full-time job. The defense also had Li's aunt, who lives in Tampa, Florida, appear at the hearing via Zoom. Li's aunt offered her home as a place for Defendant to reside if needed while he is in Tampa. Regarding the purported Chinese connections of Li's father, defense counsel argued that none of those connections resulted in any sales. Additionally, defense counsel stated that Li received very little money from the operation and did not have access to the bank account. Defendant argues the fact that he spoke truthfully with the Government about the charges demonstrates that he is not one who is running from his problems.

The magistrate judge expressed concern that the fiancée had not agreed to be a bail resource. There has been media coverage of the charges against Li that is making her uncomfortable and she does not want to be involved.

Li's aunt spoke at the hearing and agreed to allow her $700,000 Tampa home to serve as collateral for the $75,000 bond requirement. She also agreed to allow Li to live with them if he needs a place while he is in Florida.

In response, the Government again argued that Li has an incentive to flee given the lengthy incarceration he is facing if convicted and his connections to China. Despite Li's willingness to speak candidly with agents, the Government contends he did not appear to appreciate the gravity of his situation. Given Li's admissions in interviews and texts about knowing how China operates and how buyers seek to get chips into the country as well as his knowledge of the technology and specifications, the Government submits the weight of the evidence against Li is substantial.

After hearing the parties' arguments, Magistrate Judge Westmore agreed with the Government that Li does pose a flight risk, but also agreed with Pretrial Services that there are conditions that the Court can impose to address flight. The magistrate judge was persuaded by Li's lack of criminal history or anything else that would suggest he would disobey orders of the Court and flee, as well as his maternal aunt's willingness to put herself at great financial risk to sign a bond for him. However, the magistrate was concerned with the fact that his fiancée would not sign a bond for Li's release.

The magistrate judge continued the detention hearing until December 2, 2025. Doc. 51-3. Li's fiancée appeared at the hearing and was willing to co-sign on the bond and to serve as custodian along with Li's aunt in Tampa, who also appeared via videoconference. Li's fiancée, who is 38 years old and a United States citizen, explained that she was hesitant to be involved initially because of all the media attention Li's case was getting. She changed her mind because she trusts Li to do the right thing and to show up in court. She explained to the court that she has known Li for three years and they have been engaged since December 2024. Their wedding date is February 22, 2026. She moved in with Li in September 2025 into the three-bedroom San Leandro home Li bought in 2020. She described Li as a responsible person, and she does not believe that he will try to run away from this case. She stated that if Li is released and allowed to live in California, she will move back in with him eventually. She has concerns given the nature of the case and the charges against him. Notwithstanding, she was willing to co-sign the bond. She is employed full-time and has been at the same job for ten years. She owns a home that she rents. She has lived in California her whole life and has no criminal history. She was willing to help supervise Li by being a custodian.

The magistrate judge also questioned Li's aunt and confirmed that she understood what was involved in being a custodian as well as a cosigner on the bond. At the conclusion of the hearing, the magistrate judge granted Li's release with conditions, but then stayed the order of release to allow the Government to seek review before this Court.

## III.   LEGAL STANDARD

Upon motion by the Government, a district court is permitted to review a magistrate judge's release order. 18 U.S.C. § 3145(a)(1). In relevant part, § 3145(a) provides:

> If a person is ordered released by a magistrate judge, . . . --
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order . . . .

18 U.S.C.A. § 3145(a)(1).

In determining whether pretrial detention is warranted, the Court is guided by 18 U.S.C. § 3142. Specifically, the Court examines whether there are any conditions or combination of conditions which reasonably will assure the appearance of the defendant as required, as well as the safety of any other person and the community. 18 U.S.C. § 3142(e). To support detention, the Government must prove that the Defendant is a flight risk by a preponderance of the evidence, or that he is a danger to the community by clear and convincing evidence. *See United States v. King*, 849 F.2d 485, 488–89 (11th Cir. 1988). A finding that the defendant *either* poses a flight risk *or* is a danger to the community is sufficient to detain the defendant pending trial. *Id.* at 488.

## IV.   DISCUSSION

Defendant was released on bond by Magistrate Judge Westmore. That order was stayed to allow the Government to seek review of the magistrate judge's release order under 18 U.S.C. § 3145(a)(1). The Government now moves to revoke the release

order, again arguing that Li is a serious flight risk and that no condition or combination of conditions can be imposed to assure Li's appearance at future court proceedings. In making a determination regarding detention, the Court considers the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

In analyzing the § 3142(g) factors, the Court has carefully reviewed the California Pretrial Services Report and the transcripts from the hearings before Magistrate Judge Westmore, as well as conducted its own hearings on December 31, 2025,[5] and January 7, 2026. Based upon the Court's de novo review, the Court finds that while Li may pose some flight risk, there are conditions or a combination of conditions of release that can be imposed to reasonably assure Li's appearance as required. While the Government relies heavily on this Court's findings related to co-defendant Ho which resulted in Ho's detention, as discussed below, Ho's situation differs materially from Li's.

The allegations in the Indictment against the Defendants are no doubt serious. Although the defense pointed out that the President issued an executive order removing export controls over certain NVIDIA chips (including those at issue in the Indictment), there are new, even more powerful, NVIDIA AI chips that are still

---

[5] At the December 31, 2025 hearing, the Court gave the parties the opportunity to present additional evidence or witnesses, but both sides chose to rely on their arguments.

strongly controlled. And even the chips at issue can only be exported with a license, which Defendants did not have. However, Li's role in the scheme appears much less involved than co-defendant Ho's role. While Ho is charged in all 18 Counts of the Indictment, Li is charged in four of the Counts. The Government argues that it was Li who initiated the idea by boasting about his father's prior dealings and connections, but the information presented to Magistrate Judge Westmore indicates that none of those connections resulted in any sales. Further, Li received very little financially for his part in the plan[6] and he had no control over the bank account that allegedly received over three million dollars from China.

      The Government argues the weight of the evidence against Li is strong. This is but one factor in the analysis and is certainly not a controlling factor. As argued by the defense, the weight of the evidence is to be one of the least important factors for the Court to consider because the Court is not supposed to make a guilt determination pre-trial. Significantly, Li has been cooperative with government agents. While Ho was evasive and lacked candor in his dealings with the Government, the Government acknowledges Li has been truthful and forthcoming with information. The Court agrees with Magistrate Judge Westmore that Li has not provided any indication that he would not comply with the court's orders.

      Regarding the history and characteristics of this Defendant, he has no prior criminal history,[7] he held a stable full-time job for over ten years, he owns his own

---

[6] At the December 31, 2025 hearing, the parties indicated Li received less than $5,000.
[7] Unlike Ho, Li does not have a prior failure to appear in court.

home, and his fiancée is a United States citizen.[8] He also has family ties to the Tampa area. His aunt, who owns a home in Tampa with her husband, is willing to serve as custodian for Li in Tampa and be a cosigner on the bond to be secured by her home. Although he has family ties outside the United States, his international travel has been consistent with that of one visiting family.

The last factor considers the nature and seriousness of the danger to any person or the community. As indicated above, while the allegations are certainly serious, it does not appear that Li was the organizer or mastermind orchestrating the scheme. None of his "contacts" led to any sales, and given his truthfulness and willingness to speak with government agents, there is no evidence before the Court that he will continue to engage in the charged conduct.

At issue is whether Li is a flight risk. Certain factors cited by the Government, including that Li is facing a potential lengthy incarceration and loss of his Green Card, support the argument that Li presents a flight risk. However, the Court is confident that it can fashion conditions of release or a combination of conditions of release, including the imposition of GPS monitoring, that will reasonably assure Defendant's appearance in court as required and assure the safety of the community.

As discussed at the hearing on January 7, 2026, defense counsel proposed that Li live in Tampa with his aunt and uncle at their home. The Court took testimony

---

[8] Li's fiancée was willing to serve as custodian and cosigner on the bond. She has cooperated by verifying information about Li. In contrast, Ho's wife did not return calls to pretrial services when they attempted to verify information about Ho.

from Li's aunt, Shan Ren (Helen) Cua, who agreed to serve as Li's custodian and to sign a bond secured by her home. Li will serve home detention at Cua's Tampa home. By agreement, the amount of the bond will be set at $350,000.

Considering all the factors and upon this Court's independent review, the Court agrees with Magistrate Judge Westmore that although Li poses some risk of flight, there are conditions the Court can impose to reasonably assure Li's appearance at future proceedings. Accordingly, the Government's motion will be denied. It is hereby

**ORDERED**:

1.   The United States' Motion to Revoke Order of Release (Doc. 43) is **DENIED**.

2.   Defendant Cham Li is released into the custody of Shan Ren (Helen) Cua, who will serve as custodian of Cham Li.

3.   The Court imposes an Appearance Bond (Doc. 83), and additional conditions of release as reflected in the Order Setting Conditions of Release (Doc. 82).

**DONE AND ORDERED** in Tampa, Florida on January 7, 2026.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any